UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

Miguel Zubiate,

            Petitioner,

–against–

United States of America,

            Respondent.

18-cr-442 (AJN)
20-cv-9064 (AJN)

ORDER

ALISON J. NATHAN, District Judge:

    The Court is in receipt of Defendant Zubiate's Motion to Vacate, Set Aside, or Correct the Sentence brought under 28 U.S.C. § 2255. Dkt. No. 125. Mr. Zubiate moves for relief on the ground of ineffective assistance of counsel.

    In its opposition, the Government requests that Mr. Mitchell Elman, Mr. Zubiate's former counsel, submit an affidavit addressing the allegations of ineffective assistance of counsel made by Defendant, and that Court unseal or otherwise grant the Government access to the transcript of the *ex parte* proceedings between the Court and Mr. Elman during the January 8, 2019 conference. Dkt. No. 133 at 19; *see also* Dkt. No. 78.

    The Court, after reviewing the motion papers, has concluded that Mr. Elman's testimony would assist the Government in responding to Defendant's motion and would assist the Court in resolving the motion. Moreover, by making the motion, Defendant has waived attorney-client privilege as to such communications as a matter of law. *Rudaj v. United States*, No. 04 CR. 1110-01 DLC, 2011 WL 2610544, at *3 (S.D.N.Y. June 13, 2011) ("It is well settled, however, that the assertion of a claim of ineffective assistance of counsel in a habeas petition constitutes a

1

waiver of the attorney-client privilege." (citing *United States v. Pinson,* 584 F.3d 972, 978 (10th Cir.2009); *United States v. Bilzerian,* 926 F.2d 1285, 1292 (2d Cir.1991))).

Accordingly, it is hereby ORDERED that Mr. Mitchell Elman shall give sworn testimony, in the form of an affidavit, addressing the Defendant's factual assertions and providing full details of his conversations with the Defendant regarding the First Plea Offer and the Second Plea Offer, including statements by Mr. Elman and any statements by the Defendant concerning his reason for rejecting those offers. Such affidavit shall be submitted to the United States Attorney's Office on or before **February 18, 2022**. The Government's supplemental response shall be due 14 days after the submission of Mr. Elman's affidavit.

The Court also GRANTS the Government's request to unseal the January 8, 2019 *ex parte* proceedings because Defendant's motion waives the attorney-client privilege as to this communication. Accordingly, attached to this Order is the previously sealed portion of the January 8, 2019 transcript. *See* Dkt. No. 78.

The Clerk of Court is respectfully directed to mail a copy of this Order to the *pro se* Defendant and note that mailing on the docket.

SO ORDERED.

Dated: February 3, 2022
New York, New York

_____
ALISON J. NATHAN
United States District Judge

Xj181zubc                    SEALED

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

UNITED STATES OF AMERICA,

            v.                              18 Cr. 442 (AJN)

MIGUEL ZUBIATE,

              Defendant.              Ex Parte Conference

------------------------------x

                                        New York, N.Y.
                                        January 8, 2019
                                        4:16 p.m.

Before:

                HON. ALISON J. NATHAN,

                                        District Judge

                        APPEARANCES

MITCHELL C. ELMAN, ESQ.
     Attorney for Defendant

NATALI J.H. TODD, ESQ.
     CJA Attorney

1                    (Government counsel not present)

2                    MR. ELMAN:  Want me to approach, Judge?

3                    THE COURT:  No.  We'll just make sure the door is

4       closed.

5                    Okay.  We're *ex parte* at this point.

6                    Go ahead.  What's the issue?

7                    MR. ELMAN:  The issues have to do -- and a lot of it

8       has to do -- and it's not that Mr. Zubiate doesn't have

9       respect.  It's just a complete breakdown with respect to how I

10      have advised him with respect to how this case should go and to

11      how he has determined he thinks the case should go, and in the

12      interim of emails that have been sent back and forth, I had

13      asked for a co-defendant meeting with Mr. Roth several months

14      ago --

15                   THE COURT:  Could you pull up the microphone, please.

16                   MR. ELMAN:  Yes.  I'm sorry.

17                   -- with the co-defendant, the co-defendant who's now

18      ultimately been cooperated by the government, and just in

19      strategies and things that I've said to Mr. Zubiate, that we

20      just have a complete difference of opinion on the way the case

21      has gone and going forward, and it's just -- our communication

22      is just not there.  At all.

23                   THE COURT:  So, I mean, it happens all the time; a

24      lawyer gives his or her best advice based on his or her

25      experience and the facts of the case.  Client disagrees, takes

1    the advice, tells the lawyer how he wants to proceed.  That's
2    not a breakdown in attorney-client relationship.  That's the
3    lawyer's obligation then to, within the bounds of professional
4    responsibility, proceed pursuant to the client's wishes.
5              MR. ELMAN:  Absolutely.  No question.  However, he's
6    advised that he, you know, he doesn't want me involved in his
7    case, he certainly doesn't want me to try his case, and he
8    wants a completely different direction on how he wants to
9    proceed.
10             THE COURT:  Well, that's different than what you said
11   a moment ago.
12             MR. ELMAN:  Well, no.  It goes along the line of just
13   his view on the case and my view on the case and that he does
14   not want me to proceed forward with him because he disagrees
15   with everything that I have said to him.
16             THE COURT:  You're unable to effectuate his
17   decision-making in the case?
18             MR. ELMAN:  Correct.
19             THE COURT:  Why is that?
20             MR. ELMAN:  I don't know.
21             THE COURT:  You don't know.
22             MR. ELMAN:  As far as what?  Maybe I'm confused on
23   what you're asking me.
24             THE COURT:  Well, I don't know exactly what the issue
25   is here, but --

So one example, a hypothetical, is:  A lawyer thinks his client should take a plea deal that's been offered.  The client says, I don't want to take a plea deal, I want to go to trial.  Okay?  That's not a difference of opinion which would permit the lawyer to be relieved.  The lawyer's obligation then is to try the case, right?

MR. ELMAN:  Correct.

THE COURT:  So that's one possibility.

Another possibility is:  The client says, get me a better plea deal, and the lawyer says, I can't, and the lawyer says, either you have to take this deal or we're going to trial.  And the client says, no, I'm not doing it, get me a better plea deal, or something like that, just sort of refuses to accept reality.  And again, that's not a basis for withdrawing from the case.  Right?

MR. ELMAN:  I agree.

THE COURT:  So then the client doesn't want to take a plea; wants to exercise his right to go to trial.  And then there are strategic decisions that need to be made during the course of the trial, and the lawyer gives his best advice as to how to go about doing that, counsels his client, helps him make informed decisions, for example, whether to testify or not testify, something along those lines.  Again, not a basis to withdraw from the case.

MR. ELMAN:  Agree on all three.

1           THE COURT:  Okay.  So what are we talking about?

2           MR. ELMAN:  No, Mr. Zubiate has said to me, when I
3    wrote the letter to you, when I went to see him, there was a
4    new plea agreement that was given by the government.  I went --
5    I was also out of town.  I went just before I was leaving and
6    went through that with Mr. Zubiate, and he said to me, I'm not
7    interested and I want a different direction and I want
8    different counsel.  And I said, well, you have every -- I'm
9    retained counsel.  If you want to retain someone else -- and he
10   said, no, I don't have the ability to.  And he's confirmed with
11   me that he has -- as you see, he doesn't have any family
12   members here.  Right now he has indicated to me has not spoken
13   to his family, that he wants to go a different direction, and
14   that he wants new counsel, and that he doesn't have the ability
15   to hire new counsel, and this has nothing to do with funds, it
16   has to do with the approach maybe I've taken or -- what he
17   doesn't like or -- I don't know why.  But that's what he said
18   to me.  I've been doing this 30 years.  I've been a member of
19   this bar for many years.  This is the first time I've submitted
20   this application.  I'm retained counsel, and he said to me that
21   he does not want me on his case.

22          THE COURT:  Mr. Zubiate, is that where we are?

23          THE DEFENDANT:  Yes.

24          THE COURT:  Well, I mean, the concern is timing.  The
25   concern is what's happened between -- I mean, this case came in

1    originally in July of 2018.  It was before Judge Carter.  It
2    got transferred to me.  We had a status conference in October,
3    and I set January 22nd as our trial date.  And that's now three
4    weeks away.  The motions schedule came and went, the pretrial
5    submission schedule came and went.  I haven't received anything
6    from you, Mr. Elman.
7              MR. ELMAN:  No, I know that.  I told Mr. Zubiate I
8    don't think that there were relevant motions to file.
9              THE COURT:  Okay.  And then you also didn't file any
10   of the pretrial submissions.  You had no objection to the
11   government's proposed jury instructions, proposed voir dire.
12             MR. ELMAN:  At that point, your Honor -- I'll be frank
13   with the Court -- I had submitted my letter.
14             THE COURT:  You didn't request an extension of that.
15   You just assumed you're out.
16             MR. ELMAN:  I apologize for that.
17             THE COURT:  And let me just ask this straight out,
18   Mr. Elman.  You're not seeking to withdraw because your client
19   wishes to exercise his right to go to trial, you disagree with
20   that decision.
21             MR. ELMAN:  Absolutely not.
22             THE COURT:  All right.  And Mr. Zubiate, you may
23   recall when we set our schedule -- when did you decide you no
24   longer wished Mr. Elman to represent you?  Do you recall?
25             THE DEFENDANT:  First of all, we've been having many

1    issues.  Part of the issues was that I was asked to take a plea
2    from the beginning with no discovery, and that's been my
3    back-and-forth with him from the beginning.  It's not him, but
4    he kept -- I kept asking for my discovery, and it's always the
5    issue for discovery.  Now all this other stuff popped up, and
6    my first question, again:  Where's the discovery?  You can ask
7    him.
8              THE COURT:  By the other stuff popping up, you mean
9    the superseding indictment?
10             THE DEFENDANT:  Yeah, the superseding.
11             MR. ELMAN:  By the way, to interrupt, what the
12   government said is incorrect.  They did serve new discovery
13   after the first superseding indictment.  That has not been
14   received by Mr. Zubiate because there is a protective order in
15   place.
16             THE DEFENDANT:  Yeah, and then that's another issue.
17   Me and him been back and forth over the issue with the
18   discovery.  When they finally sent the discovery, now I have a
19   protective order.  I only get to see it once a week for one
20   hour, and then it gets canceled almost every week, in the law
21   library.  That's one issue I have back and forth with him.
22             Another issue we had was the motions.  He said there
23   was no motions.  I didn't -- I thought there was always some
24   type of motions to file.  And I just felt, we wasn't going the
25   right -- the same direction.  I don't know, like, what was

1   going on.  I always asked questions, and it's also very
2   difficult for me to communicate with him because I know he has
3   a lot of clients and whatever, so it's like the communication
4   was bad, the discovery issue was like a big deal to me because
5   I felt uncomfortable taking any plea without seeing my
6   discovery, and that was like, as soon as that started
7   happening, our communication was off.  And it's still off,
8   'cause now I'm getting superseded and now it's like, all right,
9   so where's the new discovery?  There's a bunch of stuff here
10  that's not on my -- that I don't know that's on my original
11  discovery.  So that's -- I don't know if that's something with
12  the government or me and him.  Like I guess I take it out on
13  him every time something like that happen.  I'm like, Mitch,
14  what's up with my discovery, what's up with this, what's up
15  with that, and I don't get it, and then --
16           THE COURT:  Well, so it sounds like there's a number
17  of issues.
18           THE DEFENDANT:  Yes.
19           THE COURT:  And you are entitled to see your
20  discovery.  There are always difficulties for incarcerated
21  defendants with access to discovery.  Protective orders make
22  things difficult as well.  But it's obviously Mr. Elman's job
23  to explain these matters to you and tell you what the situation
24  is, and it's your job to listen to him and try to make the
25  decisions going forward.

1           So let me ask you. I mean, frankly, it doesn't feel
2   like communications have totally broken down, but you tell me,
3   Mr. Zubiate. You feel like you can't work with him anymore, is
4   that where you are?
5           THE DEFENDANT: Yeah, 'cause honestly, ma'am, I don't
6   know if there's something with him. I don't know. Maybe I
7   just need a new lawyer. That's how I feel, because our
8   communication is no good.
9           THE COURT: All right. Well, I'm concerned about the
10  schedule here. This is going to be a delay, I think.
11          Ms. Todd.
12          MS. TODD: Could I make a suggestion, Judge?
13          THE COURT: Come forward, please.
14          MS. TODD: I wondered if --
15          THE COURT: Could you come to the mic so we could hear
16  you. Thank you.
17          I think I know what your suggestion is, but go ahead.
18          MS. TODD: Thank you, your Honor.
19          I wondered if a brief adjournment might be in order so
20  I could meet with Mr. Zubiate and have the frank conversation
21  with him and then report back to the Court.
22          THE COURT: Yes. I mean, I think there's two ways we
23  can proceed along those lines. One is, I require Mr. Elman to
24  remain in the case during that so we can figure out whether his
25  continued assistance is necessary in order to quickly get to

1  trial, and then the other is to relieve him and have you come
2  in and then we set a date where we'll come back and you tell me
3  what your request is in terms of scheduling matters going
4  forward.
5         Mr. Elman, I'm going to keep you in the case for now.
6  Because I don't want to put this off for a year, or six months,
7  and I'm concerned about the amount of time that's gone by at
8  this stage.  But I would like to bring Ms. Todd in as appointed
9  counsel.  I do have Mr. Zubiate's financial affidavit and he
10 appears to have no assets or income, so he qualifies for the
11 appointment of counsel.  And Mr. Elman, given how far we've
12 traveled down this road and to help ensure that we can get to
13 trial quickly, I'm going to keep you in for now.  If the
14 request, when we come back, is for you to be relieved, I'll
15 hear that request.  All right?
16         MR. ELMAN:  Your Honor, whatever the Court does.  I
17 appreciate you accommodating.  I know there's a busy schedule,
18 and as I said to you, I thought that this was in the best
19 interests certainly for Mr. Zubiate, and that's why.  It's for
20 no other reason.
21         THE COURT:  Ms. Todd, you're comfortable with that
22 arrangement?
23         MS. TODD:  Yes, your Honor.  I'll meet with him and
24 report back to the Court.
25         THE COURT:  All right.  Mr. Zubiate, I am going to

1  appoint Ms. Todd to represent you and for now keep Mr. Elman in
2  the case so that we can get to trial, if that's where we're
3  going, or other resolution as quickly as possible, but so that
4  counsel can be prepared.  Ms. Todd will meet with you, she'll
5  get the discovery from Mr. Elman, and we'll proceed from there.
6           Let me bring the government back in and we'll set a
7  schedule for a status conference.
8                               o0o